# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2822MN

_____

|  |  |  |
|---|---|---|
| Catherine M. LaClair, | * | |
| | * | |
| Appellant, | * | |
| | * | On Appeal from the United |
| v. | * | States District Court |
| | * | for the District of |
| | * | Minnesota. |
| City of St. Paul; Ross Lundstrom; and | * | |
| Dennis Conroy, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: May 13, 1999

Filed: August 13, 1999

_____

Before RICHARD S. ARNOLD, JOHN R. GIBSON, and BOWMAN, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

The plaintiff, Catherine M. LaClair, brought this suit against the City of St. Paul, claiming that certain policies and customs of her employer, the St. Paul Police Department, violated her rights under the First and Fourteenth Amendments. The District Court granted partial summary judgment for the City and dismissed LaClair's claim under the First Amendment. Her claim under the Equal Protection Clause of the Fourteenth Amendment was tried, and the jury returned a verdict for the City. LaClair

argues on appeal that the District Court[1] erred in excluding certain evidence that the City had tolerated past misconduct, thereby limiting her ability to demonstrate that her rights were violated because of a policy or custom of the City, and also incorrectly dismissed her claim under the First Amendment. We hold that no error of law or abuse of discretion occurred. The judgment will be affirmed.

## I.

LaClair's equal-protection claim stemmed from an encounter she had with Deputy Chief Ross Lundstrom while LaClair was off-duty and while both officers were out of state. According to LaClair, she was not a willing participant in this encounter, and acquiesced in Lundstrom's advances because of his authority. LaClair also claims she was prevented from reporting Lundstrom's behavior, and even forced to lie and mischaracterize the incident as consensual when questioned by department investigators, because she feared retaliation by fellow officers and supervisors.

The jury found against LaClair on her claim against Lundstrom, and we state the facts in the light most favorable to that verdict. On June 19, 1993, LaClair attended a houseboat party in Prescott, Wisconsin, with several other St. Paul police officers, including Deputy Chief Lundstrom and his girlfriend, Laurel Hutton. After drinking for several hours, LaClair and two other people from the party went to a nearby bar, where they were joined by Lundstrom and Hutton. LaClair and Lundstrom discussed various topics, including LaClair's opportunities for advancement within the department. The tone of the conversation between Lundstrom and LaClair was described as "flirting" and "playing around." According to one witness, this behavior took place whenever Hutton ventured off from the group, and ceased when she returned. There was also testimony that LaClair rubbed Lundstrom's leg, and discussed the possibility of taking

---

[1]The Hon. Ann D. Montgomery, United States District Judge for the District of Minnesota.

a "river getaway" with him. When Hutton returned, LaClair was heard to say, "Shh . . . , here comes Laurie [Hutton]." After a time, Lundstrom took Hutton back to his nearby houseboat and then left, telling her he had to go use the bathroom. Instead, Lundstrom returned to the bar, and he and LaClair went out to his car. After driving a short distance to where LaClair's car was parked, they partially disrobed and engaged in sexual activities. Meanwhile, Hutton, who had left the boat to find Lundstrom, approached the car and began to scream and pound on the window bringing an end to the incident.

A little more than a month later, on July 25, 1993, LaClair was summoned to Police Chief William Finney's office to discuss the encounter. The Chief had heard about the incident from other sources. Although she was very upset about the incident, LaClair stated that her actions with Lundstrom were consensual and insisted that she did not wish to be part of an investigation. LaClair consistently maintained this version of events through several more interviews, including one with the Internal Affairs Division.

On February 23, 1995, LaClair brought suit against the City of St. Paul[2] under 42 U.S.C. § 1983, alleging violation of her rights under the First and Fourteenth Amendments. The basis of her suit was what she contended was the City's unconstitutional "custom or practice of chilling and discouraging reports of sexual harassment by females, through toleration of retaliation once a report is made" (Appellant's Br. at 25). According to LaClair, she felt compelled to accede to Lundstrom's unwelcome sexual advances, to keep quiet about his behavior, and to lie to investigators about the incident in order to avoid the retaliation inflicted on those

_____

[2]LaClair also sued Deputy Chief Lundstrom and Dennis Conroy, a police department Employee Assistance Program psychologist. Her claims against Conroy were dismissed, and she does not appeal this ruling. Her suit against Lundstrom was settled before trial.

who reported sexual harassment. LaClair maintained that such retaliation was condoned by the policy-makers of the St. Paul Police Department from the Chief of Police on down. In order to prove these allegations, LaClair introduced evidence of the department's past and current tolerance of this type of retaliation, including testimony of female officers who had suffered similar fates. In the end, the jury responded to the special verdict form as follows:

> 1. Has Plaintiff Catherine LaClair established by the preponderance of the evidence that Ross Lundstrom sexually harassed her in violation of her right to equal protection of the law? "No."
>
> 2. Has Plaintiff LaClair proven by the preponderance of the evidence that her Fourteenth Amendment right to equal protection of the law has been violated by a hostile work environment? "Yes."
>
> 3. Has Plaintiff LaClair established by a greater weight of the evidence that the City of St. Paul has a policy, custom, or practice which caused intentional discrimination against LaClair? "No."

Appellant's Addendum at 23-24.

## II.

It is LaClair's contention on appeal that a pre-trial evidentiary ruling by the District Court prevented her from adequately explaining why she felt compelled to accede to Lundstrom's advances and hampered her ability to offer sufficient evidence of the City's unconstitutional policies. This ruling was the result of a Motion in Limine filed by the City relating to certain evidence the City sought to have excluded at trial.

First, the City wanted to exclude any evidence of alleged retaliation following a prior incident which occurred in 1989, when LaClair reported sexual harassment by another superior, Sergeant Thomas Walsh. At the time, LaClair had just completed her

-4-

police training and had been assigned to work the night shift of the Northwest Team patrol division. According to LaClair's offer of proof, on the evening of February 26, 1989, Sergeant Walsh, who was a day-shift supervisor and off duty at the time, asked the police dispatcher to contact LaClair and request that LaClair meet Walsh at the station. When she arrived, Walsh was intoxicated and partially undressed. He attempted to engage LaClair in conversation and at one point he kissed her hand and tried to embrace her. She reported this incident to the Lieutenant in charge of the Northwest Team, and the Lieutenant reported the incident to the then Chief of Police, William McCutcheon. Walsh was subsequently suspended for fifteen days for, according to McCutcheon, "being drunk and stupid."

LaClair contended that after she reported this incident she began to suffer retaliation from her co-workers and supervisors in the form of interrupted radio transmissions, refusal to respond to request for back-up during questionable calls, negative evaluations, and denial of transfer. In addition, LaClair claimed she was twice disciplined by Chief McCutcheon on groundless allegations. In the first instance, she was disciplined for making a false report. LaClair appealed this decision to the Civil Service Commission, which rescinded the charges and ordered her record cleared. In the second instance, she was herself charged with sexual harassment for briefly hugging another officer, a man named Timm, from behind. This charge was also appealed, and after a hearing an administrative law judge issued a memorandum decision which stated: "It is concluded that it [is] extremely unlikely that the hugging incident was fabricated in order to cause trouble for Officer LaClair. Even if Officer LaClair has been the subject of harassment since she filed her lawsuit or if she has had conflicts with her supervisors, there is no reason to believe that this resulted in trumped-up allegations in this proceeding" (Appellant's App. 105). The ALJ sustained the charge, but reduced the sanction from a three-day suspension to one day.

As a result of all of this alleged retaliation for reporting the Walsh incident, LaClair filed suit in 1994 in a Minnesota state court against the City and Officer Walsh.

Her claims against Walsh were dismissed for failure to prosecute, and the most of her claims against the City were dismissed on summary judgment. Her claim against the City for retaliation and under the Minnesota Whistleblower Statute, Minn. Stat. Ann. § 181.932(1)(a), proceeded to trial. After several unfavorable discovery rulings, LaClair moved to dismiss her suit without prejudice on the day of trial. This motion was denied, and LaClair declined to pursue the suit any further. On September 28, 1995, the state trial judge dismissed the remainder of the suit with prejudice.

The second area of evidence related to several pages of handwritten notes taken by an unidentified city attorney during a meeting with Chief of Police McCutcheon. The meeting concerned possible strategies for the department's response to the Walsh incident. The notes reveal, according to LaClair, that the prior Chief was insensitive to the plight of sexual-harassment victims. Evidently, these notes were produced inadvertently by the City during discovery. The City claimed attorney-client privilege still protected the notes, and LaClair claimed that any privilege was waived.

Third, the City wanted to exclude the results of a workplace assessment survey on the basis of an alleged evidentiary privilege for self-critical analysis. The survey had been ordered by Chief Finney upon taking office to evaluate how much difficulty female officers were experiencing in the male-dominated police department. And finally, the City moved to exclude comments the new Chief made during his deposition in this litigation regarding his opinion of the past administration's mishandling of the Walsh incident and the validity of LaClair's retaliation claims.

The District Court ruled much of the evidence described above inadmissible. Instead of addressing the various grounds argued by the City, the Court made a ruling restricting all testimony about the policy or custom of the department to incidents which occurred after July 15, 1992. This was the date the current Chief, William Finney, took office and was some eleven months prior to LaClair's encounter with Lundstrom. In the Court's view, evidence of the department's practices which predated the new Chief's

tenure was too distant in time to be relevant to the policies in place at the time of the Lundstrom incident in June 1993. During trial the Court amplified its reasoning.

All right. Well, the record should reflect, with respect to the objections raised yesterday and the Court's ruling in this case that the events which occurred prior to July 15th of 1992 are not relevant – I've previously said that I think there must be a temporal connection – in that regard, let me expand the record a little further in the sense that I've indicated that I think that they are not relevant because of the lack of timeliness to the plaintiff's case.

At issue in this case is, has the City of St. Paul established a custom, policy, or practice which caused intentional discrimination, the so-called creation of an environment type issue? That policy or practice comes into play because of an underlying charge of alleged sexual harassment which occurred with the so-called Lundstrom incident in the summer of '93.

The Court has arbitrarily selected approximately a year prior to that, which, just coincidentally, happens to be about the same time Finney came on, as an analysis of what's within the environment and time at which the reporting would occur for the alleged Lundstrom incident, which is the crux and the heart of the environment issue.

In that regard, in addition to that evidence before that date being marginally relevant, I think the record should reflect at this time that I find that the evidence which is sought to be elicited also has marginal admissibility on other grounds. The alleged Walsh incident, in addition to being distant in time, was the result of a State Court action, parts of which were dismissed for failure of prosecution and parts of which were dismissed with prejudice at a later point in time.

That was never adjudicated on the merits or tried. And, therefore, whether it has res judicata, collateral estoppel, or any type of claim preclusion arguments makes its admissibility dubious, at best.

Additionally, the Court is relying on Rule 403, which gives the Court the authority to exclude evidence which has a danger of confusing the issues, misleading the jury, or, by considerations of undue delay, waste of time, or needless presentation of cumulative evidence is not relevant. For those reasons, I do find that anything prior to the '92 time frame is not pertinent and relevant.

Tr. vol. IV at 12-13.

This kind of evidentiary ruling is reviewed for abuse of discretion. We have previously emphasized that proof of incidents other than those actually in suit should, in general, be freely allowed in discrimination cases. Where a defendant's state of mind is at issue, conduct by the defendant in other situations may be the only practical way a plaintiff can establish her case. See, e.g., Estes v. Dick Smith Ford, Inc., 856 F.2d 1097, 1102 (8th Cir. 1988). We do not retreat from these expressions. The same principle applies where, as here, a plaintiff must show that a practice or custom is "so permanent and well settled as to constitute a custom or usage with the force of law," in order to establish municipal liability. Monell v. Department of Social Services, 436 U.S. 658, 691 (1978). For this reason courts should allow a reasonable degree of latitude to plaintiffs attempting to satisfy what is necessarily a difficult standard of proof. The factfinder must be allowed to see the "big picture" in order to judge adequately what is, by definition, a state of affairs that exists only informally or by implication.

We believe, however, that there are special circumstances in the present case that weigh strongly in favor of the District Court's decision to exclude the evidence. Most of the evidence excluded related to two previous incidents, one involving Sergeant Walsh and one involving Officer Timm. In both of these cases, impartial decisionmakers had found against LaClair. Her lawsuit based on the Walsh incident had been dismissed with prejudice by a state court, and an administrative law judge had

found, in the Timm incident, that LaClair herself had been guilty of harassment. If the District Court had admitted evidence of these two previous incidents, presumably all of the evidence would have come in, including not only LaClair's version of the facts and their claimed effect on her state of mind, but also the result of both proceedings, a result unfavorable to LaClair. In this perhaps unusual state of affairs, we conclude that the District Court was within its rights in ruling as it did. A great deal of time would have been consumed by the evidence relating to these previous incidents, particularly the one involving Sergeant Walsh, and, in the end, the jury would have known that LaClair had lost both cases. It may be, as LaClair contends on appeal, that the rulings in these previous matters were not entitled to res judicata or collateral-estoppel effect, but that is not really the point. Even if LaClair would not have been precluded from relitigating the facts underlying these incidents, the jury would still have been told that the decisions had been adverse to her. In addition, the fact that the incidents occurred during the administration of a prior Chief is important. When all of these factors are weighed together, we hold that the District Court did not err. This is the sort of decision that district judges must be primarily responsible for, and they should be given wide latitude, within reasonable limits, to decide these matters.

## III.

LaClair also argues that the District Court erred in dismissing her claim of retaliation under the First Amendment. This claim alleged that the department's policy of retaliating against females who reported sexual harassment prevented LaClair from reporting a matter of public concern. This legal theory, based on the First Amendment, is only another way of stating, with different legal labels, the Fourteenth Amendment fear-of-retaliation theory that we have already discussed. With respect to this latter theory, the jury found that there was no policy or custom of the City sufficient to support LaClair's action. This finding is fatal to the First Amendment claim as well.

\* \* \* \* \* \*

For the reasons given, the judgment of the District Court, dismissing LaClair's claims with prejudice, is

Affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.