Curtis **KINNARD, Plaintiff–Appellant,**

v.

**RUTHERFORD COUNTY BOARD OF EDUCATION, Defendant– Appellee.**

No. 03–5353.

United States Court of Appeals, Sixth Circuit.

Sept. 2, 2004.

James L. Harris, Nashville, TN, for Plaintiff–Appellant. John D. Schwalb, Provost & Umphrey, Nashville, TN, for Defendant–Appellee.

Before: KEITH, CLAY, and GIBBONS, Circuit Judges.

KEITH, Circuit Judge.

Plaintiff–Appellant Curtis Kinnard ("Kinnard" or "plaintiff") appeals the jury verdict for the Defendant–Appellee Rutherford County Board of Education ("defendant") in this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.,* claiming race discrimination in employment, the trial court's evidentiary rulings, and the trial court's grant of summary judgment for the defendant on plaintiff's claim for retaliation. For the reasons that follow, we AFFIRM the trial court's decision.

## I. BACKGROUND

### Procedural

This case was originally filed on December 28, 1999. By consent of the parties, the case was transferred to U.S. Magistrate Judge Joe B. Brown. Kinnard secured new counsel after his initial counsel withdrew from the case.

The defendant moved for summary judgment, which the court granted in part and denied in part, dismissing Kinnard's retaliation claim under Title VII, but allowing him to proceed with his claim for discrimination under Title VII. The case proceeded to trial originally in July 2002, resulting in a mistrial. At the close of plaintiff's proofs at the trial, defendant moved for dismissal of plaintiff's claim brought pursuant to 42 U.S.C. § 1981(a). This motion was granted on the record. Kinnard's trial counsel from the first trial filed a motion to withdraw, which was granted; and Kinnard secured new counsel.

On December 17, 2002, the second jury trial began and the jury returned a verdict in favor of the defendant. Kinnard filed a Fed.R.Civ.P. 59 motion, in the form of a Rule 60 motion. The trial court entered an order to set aside the Judgment and reentered it to allow the ten days for filing of post-trial motions. On February 7, 2003, plaintiff filed a motion for a new trial. On February 20, 2003, the trial court denied the motion, and plaintiff timely appealed.

### Factual

In 1993, Kinnard, an African–American, was hired to work as a special education teacher at Smyrna High School in the Rutherford County School System.[1] To obtain employment, individuals had to go through a two-step process of interviews, which required an interview with: (1) the coordinator over the area in which the teacher was certified or would teach, who was Penny Hooper ("Hooper"), the Coordinator of Special Education for Rutherford County Schools; and (2) the principal of the school, who was Robert Raikes

---

1. Prior to Kinnard's hiring, two other African American special education teachers had been hired, neither of whom was employed at the time of Kinnard's employment.

("Raikes"). The Special Education Department Head at Smyrna High School during Kinnard's tenure was Elysee Beasley ("Beasley"); Beasley was not involved in the interview process.

As part of her responsibilities, Hooper interviewed Kinnard during the initial screening process and rated him a 3.5 (on a scale of 1 to 5). During Kinnard's employment, Hooper had been contacted by Raikes concerning Individual Education Plans ("IEP") not being properly completed and procedures not being properly followed. Raikes evaluated Kinnard on two separate occasions, recommending Kinnard for re-employment after year one, but not recommending him for re-employment following the second year. The scores on Kinnard's evaluations declined, and were only "slightly" above the threshold for maintaining employment. According to Kinnard, none of the evaluations made during the 1993–94 and 1994–95 school years mentioned any problems concerning IEP's nor did they mention problems with classroom management.

Following the 1994–95 school year, Raikes recommended that Kinnard not be rehired as a consequence of what he thought were Kinnard's classroom management and other problems. As a result, on September 20, 1995, Kinnard filed a charge of discrimination with the EEOC against the Rutherford County Board of Education ("Board of Education"), alleging that his termination from the High School was racially discriminatory. On September 21, 1995, Kinnard appeared at a meeting of the Board of Education, where he complained about the discriminatory treatment he had received. A week later, in

September 1995, Kinnard was hired as a social studies teacher at Smyrna Middle School to fill an interim position, and was instructed that the position was non-renewable. Donald Jernigan ("Jernigan"), the principal of Smyrna Middle School, hired Kinnard despite his negative reference from Smyrna High School because the position was for a limited time (the school year) and the position was not special education. At the time of his hire, Kinnard had already filed a charge of discrimination (against the defendant), and the Board of Education was aware of the EEOC charge which Kinnard had filed against it.

Kinnard was evaluated by Jernigan, who noted a number of deficiencies. Jernigan was not called upon to make the decision to recommend Kinnard for rehire, but has stated that he would have recommended against rehire. Moreover, based upon Kinnard's evaluation scores at Smyrna Middle School, which were below the minimum competencies for a teacher with his experience, he could not have been retained. Kinnard never filed a charge of discrimination regarding his employment at Smyrna Middle School.[2] On December 8, 1997, Kinnard filed a second charge of discrimination, alleging that he was not hired for the 1996–97 school year in retaliation for asserting his rights under Title VII.

## II. DISCUSSION

### A. Standard of Review

#### 1. Summary Judgment

We review a district court's grant of summary judgment *de novo*, using the same standard under Federal Rule of Civil

**2.** The Tennessee Department of Education has promulgated standards applicable to the Rutherford County School System regarding the number of African American teachers who should be employed by the system. The re-

port by Dr. Phyllis Washington, Director of Secondary Education, demonstrates that for the years relevant to this action, Rutherford County was not in compliance with these standards.

Procedure 56(c) used by the district court. *Williams v. Mehra,* 186 F.3d 685, 689 (6th Cir.1999) (en banc). We consider the record as it stood before the district court at the time of its ruling. *Niecko v. Emro Mktg. Co.,* 973 F.2d 1296, 1303 (6th Cir. 1992). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). We view the evidence, all facts, and any inferences that may be drawn from the facts, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Bell v. Ohio State University,* 351 F.3d 240, 246–247 (6th Cir.2003). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### 2. Evidentiary Rulings

This court reviews evidentiary rulings concerning relevance and admissibility for an abuse of discretion. *U.S. v. Brown,* 367 F.3d 549, 554 (6th Cir.2004). "[U]nder the abuse of discretion standard employed with respect to evidentiary rulings, the [trial] court's decision[s] regarding [ ]evidence should remain undisturbed unless this [court] is left with the definite and firm conviction that the district court clearly erred in its judgment after weighing the relevant factors, improperly applied the correct law, or inappropriately used the wrong legal standard." *Shanklin v. Norfolk S. Ry. Co.,* 369 F.3d 978, 988 (6th Cir.2004).

### B. The Trial Court's Evidentiary Rulings

Kinnard challenges several of the district court's evidentiary rulings, each of which is addressed in turn.

### 1. The Testimony of Dwight Ogleton [3]

██ When Kinnard attempted to introduce the testimony of Dwight Ogleton ("Ogleton"), the president of the local chapter of the NAACP, the trial court allowed counsel to conduct an extensive examination of Ogleton outside the jury's presence. During the examination, Ogleton testified that he had approached the two superintendents of the Rutherford County School System on multiple occasions in an effort to correct what was perceived as an unfair racial imbalance between the student population and the teacher population. J.A. at 300–05. Ogleton's testimony was excluded because, in the words of the trial court:

> [While] there is a [racial] imbalance between teachers and students[, t]hat is

---

3. In his brief, the Appellant refers to the "testimony of Ogleton and Siebert," but only discusses the testimony of Dwight Ogleton. Appellant's Br. at 10. The parties have not cited the portions of the record that involve "Sie-

bert," and have failed to identify a person with that last name. Accordingly, this court has treated the proffered testimony of Ogleton and "Siebert" as identical for purposes of this opinion.

not the real issue. The issue is whether Mr. Kinnard was discriminated against because of his race ... I just don't see that [Ogleton's] testimony is going to assist the jury in determining Mr. Kinnard's case.

(J.A. at 305).

Ogleton did testify that he spoke to principals and the superintendent about "[t]he concern of a lack of representation as far as educators are concerned ... and that there were individuals that ... were trying to get into the [school] system ... and were having somewhat of a difficult time doing so." J.A. at 299. Ogleton's testimony, however, dealt with a time period which was in the four years preceding trial—at least two years after Kinnard had left the system. Thus, as the district court held, Ogleton's testimony provided no information concerning the School Board's employment practices during the relevant time frame—1993 through 1996, the time period during which Kinnard allegedly suffered race discrimination.

■ Relevancy [4] determinations are left to the discretion of the trial court and "should remain undisturbed unless this [court] is left with the definite and firm conviction that the district court clearly erred in its judgment after weighing the relevant factors, improperly applied the correct law, or inappropriately used the wrong legal standard." *Shanklin*, 369 F.3d at 988. After examining the record, and weighing the assertions of Kinnard,

this court is not left with the "definite and firm conviction" that the trial court clearly erred in excluding the testimony of Ogleton. Even assuming *arguendo* that the trial court did abuse its discretion in excluding the testimony of Ogleton, a new trial is not warranted unless, in the absence of the error, the outcome of the trial would have been different. *Morales v. American Honda Motor Co.*, 151 F.3d 500, 514 (6th Cir.1998). Kinnard has failed to make such a showing.

### 2. The August 8, 2001 Letter from Morgan Branch

■ Morgan Branch, an employee with the State of Tennessee Department of Education, allegedly sent an August 8, 2001 Letter (the "Letter") to Kinnard. The Letter allegedly concerned the student-teacher ratio within the Rutherford County School System.[5] J.A. at 350–51. Reviewing the alleged content of the Letter, this court finds that it was irrelevant because it failed to make the relevant comparison—i.e., between the percentage of African–American teachers in the school system to the percentage of African–Americans in the relevant labor market who might apply for a teaching job. *Cf. Bell v. E.P.A.*, 232 F.3d 546, 553 (holding that statistical evidence that was too broad to support a prima facie case of systemic disparate treatment was nevertheless admissible in plaintiff's individual disparate treatment case, but noting that a "valid statistical analysis must encompass the rel-

---

**4.** Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Rule 403 of the Federal Rules of Evidence further provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion

of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403.

**5.** The Letter does not appear to be included within the record before this court. Only a description of the Letter is provided in the parties' briefs and in the Joint Appendix, at pp. 350–51.

evant labor market"). An absolute mismatch between the two groups being compared for racial composition renders the Letter incapable of "mak[ing] the existence of [disparate treatment against Kinnard] more probable or less probable than it would be without the evidence." FED. R.EVID. 401.

In his brief, Kinnard has made no showing of its relevance, again asserting that the Letter "dealt with the ratios between ... students ... and teachers." Appellants Br. at 10. Moreover, Kinnard has failed to show how its inclusion would have resulted in a different outcome at trial.

### 3. Limitation on the Testimony of Tommy Brown, Jerry Chestnut, and Melvin Daniels

■ Tommy Brown ("Brown"), a teacher at Smyrna High School, was prevented from testifying about a racial imbalance between the students and teachers at Smyrna High School.[6] J.A. at 466–67. Again, Kinnard has made no showing that the trial court abused its discretion by excluding Brown's testimony to that effect.[7]

Jerry Chestnut ("Chestnut"), a teacher at Smyrna High School, testified at the trial. Kinnard asserts in his brief that Chestnut's testimony was limited by the trial court. Appellant's Br. at 11. Finally, Kinnard asserts that the testimony of Mel-

vin Daniel ("Daniel"), an administrator at Smyrna Middle School, was also limited at trial. Kinnard has not cited, and, after reviewing the transcript of the trial, this court has not identified any limitation placed upon Chestnut's or Daniel's testimony.

### 4. Admission of Evidence of the Smyrna Middle School Evaluation

■ The issue before the jury was whether the Board of Education discriminated against Kinnard when it failed to rehire him at Smyrna High School following the 1994–95 school year. The trial court specifically instructed Kinnard to avoid the implication that Raikes's evaluation kept him from getting another job. J.A. at 392. Nonetheless, on both direct and cross-examination, Kinnard "opened the door" to discussion of his performance at Smyrna Middle School. For example, Kinnard was asked on direct whether he reactivated his application with the Board of Education, mentioned filling out applications, and further claimed that there were no problems with his evaluation. J.A. at 402. Based upon Kinnard opening the door to cross-examination, the trial court allowed counsel for the Board of Education to proceed. J.A. at 408–09.[8]

In his brief, Kinnard has failed to show how the trial court abused its discretion in

---

6. Kinnard offered no evidence regarding the racial composition of the relevant applicant pool. Kinnard's reliance on *Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097 (8th Cir. 1988), is misplaced. If Kinnard sought to introduce evidence of prior acts of discrimination, the *Estes* would have provided support for his position. Here, however, *Estes* does not support the proposition that a student-teacher ratio is evidence of discrimination. Such evidence standing alone is not relevant.

7. Moreover, essentially the same evidence was admitted through the testimony of Phyllis Washington, an administrator with the Board of Education, and Kinnard has not shown how this substantially similar evidence would have resulted in a different outcome at trial. J.A. at 347–51.

8. According to the trial court, "[Kinnard] testified six times or volunteered that things happened after he went to the Board. He brought it up himself every time he had the chance; not saying retaliation but saying everything but." J.A. at 409.

admitting evidence of the Smyrna Middle School evaluation.[9] Moreover, Kinnard has not shown that, in the absence of the alleged error, the outcome of the trial would have been different. *Morales*, 151 F.3d at 514.

## 5. Admission of the Stones River Academy Evaluations

■ During the testimony of Gail Tune ("Tune"), an employee in the personnel department of the Board of Education, Kinnard's counsel examined her about Kinnard's positive letters of recommendation from Stones River Academy Director Mona Sanderson ("Sanderson"). During cross-examination, the defendant pointed out that there were also recommendations from Sanderson that were not as favorable as those offered by Kinnard. The evaluations were part of Kinnard's personnel file that existed prior to any evaluation at Smyrna High School. At no point during the trial did Kinnard object to the introduction of the evaluations from Stones River Academy. By failing to object to the admission of the evaluations as evidence at trial, Kinnard waived such admission as an issue for appeal. *Investors Credit Corp. v. Batie*, 995 F.2d 85, 89 (6th Cir.1993).[10] Furthermore, there has been no showing that a "substantial right of a party is affected" by this foreclosure. *American Anodco, Inc. v. Reynolds Metals Co.*, 743 F.2d 417, 424 (6th Cir.1984).

## C. The Retaliation Claim

■ To establish a prima facie case of retaliation under Title VII, a plaintiff must prove by a preponderance of the evidence:

1) plaintiff engaged in activity protected by Title VII; 2) plaintiff's exercise of [such protected activity] was known by the defendant; 3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and 4) that there was a causal connection between the protected activity and the adverse employment action.

*DiCarlo v. Potter*, 358 F.3d 408, 420 (6th Cir.2004) (citation omitted).

"The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." *Id.* "Once a prima facie case is established, the burden of producing some non-discriminatory reason falls upon the defendant." *Id.* "If the defendant demonstrates such, the plaintiff then assumes the burden of showing that the reasons given by the defendant were a pretext for retaliation." *Id.* A plaintiff may establish pretext by showing that the proffered reason: (1) has no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to motivate the adverse employment action. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir.1994).

Even assuming, as does the dissent, that Kinnard could have established a prima facie case of retaliation,[11] the defendant

---

**9.** Rule 402 of the Federal Rules of Evidence provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." FED.R.EVID. 402.

**10.** Even if the issue had been preserved for appeal, Kinnard has failed to make a showing

that the trial court abused its discretion by admitting the Stones River Academy evaluations.

**11.** As the trial court noted, however, " 'when opposing a motion for summary judgment on a retaliation claim, the nonmoving party may not rely on the mere fact that an adverse employment action followed protected conduct.' (citing *Collyer v. Darling*, 98 F.3d 211, 229 (6th Cir.1996)). That is to say, plaintiff

presented a legitimate, non-discriminatory reason for not rehiring Kinnard, i.e., Kinnard's deficient work performance. Kinnard has presented no evidence that the reason offered by the defendant for not rehiring Kinnard was simply a pretext for underlying discrimination. Kinnard cannot show pretext by simply asserting his personal belief that he was the most qualified or that Jernigan or Raikes had no problem with his work performance.

Accordingly, the trial court did not err when it granted the defendant's motion for summary judgment on Kinnard's retaliation claim.

## III. CONCLUSION

For the reasons stated above, the trial court's evidentiary rulings and grant of summary judgment for the defendant are **AFFIRMED**.

CLAY, Circuit Judge, concurring in part and dissenting in part.

Contrary to the majority's decision, the district court's dismissal of Kinnard's retaliation claim should be reversed. The primary reason for the district court's grant of summary judgment was its conclusion that there was no causal connection between Kinnard's protected activity (filing an EEOC charge and complaining about race discrimination to the School Board) and his adverse employment action (the conversion of his permanent teaching position at Smyrna Middle School to a temporary one). I believe there was a jury question on this issue.

There was an extremely short time-frame between the dates Kinnard filed his EEOC charge and complained to the School Board and the date he was informed that the Middle School position for which he had been hired was temporary—only about one week. Further, in denying summary judgment on Kinnard's race discrimination claim, the trial court held that Kinnard had demonstrated the existence of a genuine issue of material fact as to whether the School Board's proffered reason for the non-renewal of Kinnard's contract at Smyrna High School was in fact pretextual. Among other things, the court noted the lack of documentation supporting Principal Raikes' decision not to recommend Kinnard for hire following his second year at the high school. Implicit in this finding was the conclusion that a jury could infer that Principal Raikes' had been dishonest and wished to conceal the School Board's true reason for not renewing Kinnard's contract at the high school. Although Kinnard's retaliation claim does not challenge that particular employment decision, but rather the decision regarding the Middle School position as well as subsequent openings in the school system, a reasonable jury could infer that Raikes had a motive to retaliate against Kinnard after Kinnard filed an EEOC charge and complained to the School Board.

The record suggests that Principal Raikes spoke about Kinnard with Principal Jernigan of the Middle School prior to Jernigan hiring Kinnard. Arguably, because of something Raikes said in that conversation, Jernigan converted the Middle School position into a temporary position. Thus, the short time-frame between the protected activity and the adverse employment action, combined with Raikes' involvement with the hiring process at the Middle School, would permit a reasonable jury to infer that Kinnard suffered retaliation when he was offered only a temporary position, even though (as Kinnard claims)

---

must adduce some evidence that the adverse action was taken at least in part because of

his EEOC filing. This plaintiff has simply failed to do [so]." J.A. at 127.

the position previously had been posted as permanent in nature.